**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **TRUSTEES OF THE PLUMBERS AND**<br>**STEAMFITTERS LOCAL 267 PENSION, ANNUITY,**<br>**AND INSURANCE FUNDS; and PLUMBERS AND**<br>**STEAMFITTERS LOCAL 267,** | **5:03-CV-898**<br>**(FJS/GJD)** |

**Plaintiffs,**

**v.**

**BUCHANAN, INC.; and THOMAS BUCHANAN, Individually**
**and as Principal Officer of Buchanan, Inc.,**

**Defendants.**

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **CHAMBERLAIN, D'AMANDA**<br>**OPPENHEIMER & GREENFIELD, LLP**<br>1600 Crossroads Building<br>Two State Street<br>Rochester, New York 14614<br>Attorneys for Plaintiffs | **ANDREW M. BUTLER, ESQ.**<br>**MICHAEL T. HARREN, ESQ.** |
| **COUGHLIN & GERHART, LLP**<br>20 Hawley Street<br>P.O. Box 2039<br>Binghamton, New York 13902-2039<br>Attorneys for Defendants | **JOSEPH J. SEFLIK, JR., ESQ.** |

**SCULLIN, Chief Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiffs commenced this action on July 7, 2003, pursuant to the Employee Retirement

Income Security Act of 1974, 29 U.S.C. §§ 1132(d)(1), 1145 ("ERISA"), and under 29 U.S.C.

1

§ 185.[1]  Specifically, Plaintiffs claim that Defendants violated ERISA's provisions by failing to make contributions to a multi-employer plan in compliance with the terms and conditions of the collective bargaining agreement and that Defendants breached the collective bargaining agreement when they failed to permit an audit, failed to pay employee benefit contributions as that agreement required, and failed to withhold or remit dues.  In addition, Plaintiffs claim that they are entitled to liquidated damages, accrued interest, audit fees, attorney's fees, costs, and injunctive relief permitting them to conduct an audit.  Currently before the Court is Plaintiffs' motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment.


## II. BACKGROUND

Plaintiffs are the Trustees of Plumbers and Steamfitters Local 267 Pension Fund ("Pension Fund"), the Trustees of Plumbers and Steamfitters Local 267 Annuity Fund ("Annuity Fund"), the Trustees of Plumbers and Steamfitters Local 267 Insurance Fund ("Insurance Fund"), (collectively "the Funds"), and Plumbers and Steamfitters Local 267 ("Local 267").[2]

Defendant Buchanan, Inc., an independent contractor, signed a collective bargaining

---

[1]  Plaintiffs acknowledge that an issue of fact exists with respect to whether they can hold Defendant Thomas Buchanan personally liable for the amounts that Defendants allegedly owe them.  *See* Plaintiffs' Reply Memorandum of Law at 2.  Thus, for the purposes of this summary judgment motion, they withdraw their claim against Defendant Thomas Buchanan; and, if the Court grants their motion, they will discontinue the action against Mr. Buchanan individually. *See id.*

[2]  Plaintiffs allege that the Funds are multiemployer employee Benefit Plans within the meaning of ERISA, 29 U.S.C. § 1001, and bring these claims against Defendants for contributions owed to the Funds under ERISA.  Plaintiff  Local 267, as labor organization within the meaning of 29 U.S.C. § 152(5), brings this action against Defendants for unpaid dues pursuant to 29 U.S.C. § 185.  *See* Plaintiffs' Complaint at ¶¶ 1-2.

2

agreement, effective May 1, 2000, through April 30, 2003 ("2000-2003 CBA" or "Agreement"),

between Local 267 and the Mechanical Trades and Master Plumbers Association of Central New

York.  *See* Plaintiffs' Statement of Material Facts at ¶ 1; Defendants' Response to Statement of

Material Facts at ¶ 1; Plaintiffs' Memorandum of Law at 1; Defendants' Brief in Opposition at 1.

The Agreement, which contained an evergreen clause,[3] required the employer  to make contributions

to the Funds for each hour that its employees worked under the terms of the Agreement and to

deduct dues from its employees' wages and remit them to Local 267.  *See* Plaintiffs' Statement of

Material Facts at ¶¶ 1-2;  Plaintiffs' Statement of Material Facts at Exhibit "A" at Arts. 18-19;

Defendants' Response to Statement of Material Facts at ¶ 2.  In addition, the Agreement contained

provisions that entitled Plaintiffs to audit the employer's records to determine the correctness of an

employer's contributions and incorporated by reference the Agreements and Declarations of Trust

which created the Funds.  *See* Complaint at ¶¶ 11, 13; Plaintiffs' Statement of Material Facts at

Exhibit "A" at Art. 18 §18.8.[4]

---

[3] An evergreen clause is a clause "that automatically renews itself from one term to the next in the absence of contrary notice by one of the parties."  *Black's Law Dictionary*  344 (8th ed. 2004).  The 2000-2003 CBA's evergreen clause provides that "[t]his Agreement shall be renewed automatically from year to year after the termination date.  If any party wants to change this Agreement, he must notify the other party in writing at least three (3) months prior to the termination date."  *See* Plaintiffs' Statement of Material Facts at Exhibit "A" at Art. 1.

[4] Plaintiffs allege that the Agreement includes these provisions; Defendants deny that the Agreement contains provisions that entitle Plaintiffs to conduct an audit to determine the correctness of the employer's contributions, and they claim to lack sufficient knowledge or information as to whether the 2000-2003 CBA incorporates by reference the Agreements and Declarations of Trust which created the Funds.  *See* Complaint at ¶¶ 11, 13; Answer at ¶¶ 2-3.

Despite Defendants' denials and assertions of lack of sufficient knowledge, Article 18.2 of the 2000-2003 CBA provides that "[e]mployers covered by this Agreement agree to be bound by all the terms of the Trust Agreements . . . and by all of the actions and rules of the Trustees

(continued...)

3

Plaintiffs allege that, for the period of January 1, 2003, to the present, Defendants have violated 29 U.S.C. § 1145 and that, despite demands that Defendants submit remittance reports and pay delinquent contributions and dues, Defendants have refused and continue to refuse to provide the reports and pay the amounts due. *See* Complaint at ¶ 15. To the contrary, Defendants assert that they contacted Local 267 and the Funds to try to arrange payment on numerous occasions in 2002, 2003, and 2004, and were willing to pay, without admission, the amounts that Defendants computed; however, Plaintiffs allegedly refused payments unless the amounts due for work performed after May 1, 2003, were calculated using the rates that were established after May 1, 2003.[5] *See id.* at ¶ 3.

———————————

[4](...continued)
administering such funds in accordance with the Trust Agreements . . . ." *See* Plaintiffs' Statement of Material Facts at Exhibit "A" at Art. 18.2. Moreover, Articles 18.7 and 18.8 of the 2000-2003 CBA indicate that Plaintiffs have a right to conduct an audit. Article 18.8 states that "for the purpose of collecting any payments required to be made to [the] Funds . . . and for the purpose of enforcing the rules of the Trustees concerning the inspection and audit of payroll records [the Trustees or Administrators to the Several Funds may] seek any appropriate legal, equitable and administrative relief . . . ." *See id.* at Art. 18.8. As these articles make clear, the 2000-2003 CBA supports Plaintiffs' assertions and, therefore, despite Defendants' contentions to the contrary, there is no issue of fact regarding these rights that the 2000-2003 CBA affords.

[5] The successor collective bargaining agreement ("2003-2006 CBA") went into effect on June 1, 2003, not May 1, 2003, *see* Plaintiffs' Reply Memorandum of Law ("Plaintiffs' Reply Mem.") at 2; Plaintiffs' Statement of Material Facts at Exhibit "C," even though the period that the 2000-2003 CBA covered ended on April 30, 2003.

4

## III. DISCUSSION[6]

**A.      Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue of fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In evaluating the evidence on a motion for summary judgment, the court must resolve ambiguities and draw all reasonable inferences in a light most favorable to the non-moving party and must accept the non-moving party's version of the facts as true. *See id.* at 255 (citation omitted); *Liscio v. Warren*, 901 F.2d 274, 276 (2d Cir. 1990) (citations omitted). However, conclusory statements, conjecture or speculation will not defeat the motion. *See Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (citations omitted). Rather, the non-moving party must come forward with "*specific facts* showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added).

-----------------------

[6] Neither party provided the Court with any collective bargaining agreement other than the 2000-2003 CBA. The Court assumes, however, that, when the 2000-2003 CBA expired, a similar three-year collective bargaining agreement went into effect, although, as noted, the effective date of that CBA was June 1, 2003, rather than May 1, 2003.

**B.      Fund Contributions**

*1. Liability*[7]

With regard to the Funds' claims for delinquent contributions, it does not appear that

Defendant Buchanan Inc. disputes that under the CBA it is required to and has failed to make

contributions to the Funds.  Rather, the crux of the parties' disagreement is the proper calculation of

the amount of these delinquent contributions.  Accordingly, the Court grants Plaintiffs' motion for

summary judgment on the issue of Defendant Buchanan Inc.'s liability to remit the contributions

due to the Funds.

*2. The applicable rates that the Court should use to compute contributions that*
*Defendants owe to the Funds*

Plaintiffs assert that they are entitled to recover the amount of contributions that Defendants

owe to the Funds using the rates in effect during the period of April 7, 2003, through June 13, 2003,

i.e. from April 7, 2003, through May 31, 2003, at the rates set forth in the 2000-2003 CBA and from

June 1, 2003, through June 13, 2003, at the rates set forth in the 2003-2006 CBA.[8]  *See* Plaintiffs'

Statement of Material Facts at ¶ 5.  Using these rates, Plaintiffs assert that Defendants owe the

Funds a total of $27,827.30: $ 13,942.46 in contributions, *see id.* at ¶ 5, Exhibits "C," "D;"

---

[7] Defendants state that "both Local 267 and the Funds are computing the amounts pursuant to the cba and increased amounts under a subsequent agreement to which Buchanan, Inc. is not a signatory party."  *See* Defendants' Mem. of Law at 1.  The issue here is complicated by the fact that the period for which Plaintiffs claim that Defendants owe them for unpaid contributions and dues straddles the effective dates of two collective bargaining agreements.

[8] Since the 2000-2003 CBA automatically renewed, and there is no evidence in the record that the 2003-2006 CBA, effective June 1, 2003,  is retroactive to May 1, 2003, the 2000-2003 CBA continued in effect during May 2003.

$2,788.49 in liquidated damages; $9,781.35 in interest; $1,000 in attorney's fees; and $150 in court costs, *see* Plaintiffs' Statement of Material Facts at ¶ 7.  In response, Defendants assert that Defendant Buchanan Inc. is at most liable for unpaid contributions to the Funds calculated using the rates set forth in the 2000-2003 CBA because Plaintiffs failed to request changes to the Agreement as that Agreement required.[9]

Courts must strictly enforce the terms of a collective bargaining agreement when the terms are unambiguous.  *See Contempo Design, Inc. v. Chicago & Northeast Ill. Dist. Council of Carpenters*, 226 F.3d 535, 546 (7th Cir. 2000) (citing *Young v. North Drury Lane Prods.*, 80 F.3d 203, 205 (7th Cir. 1996)) (other citations omitted) (finding that the district court had correctly concluded that, because neither party had provided written notice prior to the expiration of the 1993 collective bargaining agreement, the automatic renewal provision went into effect and the parties became bound to the 1995 collective bargaining agreement).  Moreover, although an "employer who fails to sign an agreement and evinces no intention to be bound is not required to make contributions," *Bldg. Serv. 32B-J Pension Fund v. Vanderveer Estates Holding, LLC*, 127 F. Supp. 2d 490, 493 n.1 (S.D.N.Y. 2001) (citing *Moglia v. Geoghegan*, 403 F.2d 110, 118 (2d Cir. 1968)), a "party to [a ] prior written agreement is bound to [an] unsigned successor agreement when it manifests an intention to remain bound thereto."  *Id.* (citing *Brown v. C. Volante Corp.,* 194 F.3d 351 (2d Cir. 1999)).  Finally,  "'[b]oth § 302(c)(5)(B) and general principles of contract law permit

---

[9] Defendant Buchanan Inc. also claims that summary judgment is premature because it needs to conduct discovery since Local 267 and the Funds have exclusive knowledge as to the reasons for their refusal to calculate the amounts due under the 2000-2003 CBA properly, their refusal to supply manpower, their failure to respond to Defendant Buchanan Inc.'s inquiries, and their reason for giving more favorable treatment to other signatories in violation of the "most favored nations clause."  *See* Buchanan Aff. at ¶ 10; Defendants' Mem. at 3.

an employer to adopt a collective bargaining agreement by a course of conduct plus a writing . . . a signature at the bottom of the collective bargaining agreement itself is unnecessary.'" *Brown v. C. Volante Corp.*, 194 F.3d 351, 355 (2d Cir. 1999) (quoting *Moriarty v. Larry G. Lewis Funeral Dirs. Ltd.,* 150 F.3d 773, 777 (7th Cir. 1998)).

Defendant Buchanan Inc. admits that it was a signatory to the 2000-2003 CBA, which by virtue of its evergreen clause automatically renewed when it expired on April 30, 2003, unless one of the parties terminated it. Since there is no evidence that either party notified the other that it intended to terminate the 2000-2003 CBA, that Agreement automatically renewed upon its expiration, and, therefore, remained in effect during May 2003. *See* Defendants' Mem. of Law at 2. Thus, because Defendant Buchanan Inc. was a signatory to the 2000-2003 CBA, it remained bound to its terms upon its renewal.

Moreover, although Defendant Buchanan Inc. argues that it never signed a new agreement with Plaintiffs, Defendant Buchanan Inc. is bound to the 2003-2006 CBA because it manifested an intent to be bound by that agreement. Plaintiffs' evidence demonstrates that Defendant Buchanan Inc. implemented the new rates by paying the increased union wages to its employees. *See* Plaintiffs' Statement of Material Facts at Exhibit "B;" Plaintiffs' Reply Mem. at 2. In addition, although Defendant Buchanan Inc. argues that Plaintiffs instructed union employees to quit and did not provide him with manpower, the certified payroll reports and calculations that Plaintiffs submitted indicate that from April 7, 2003, through June 15, 2003, Defendant Buchanan Inc. employed union employees and deducted union dues from their wages. *See* Plaintiffs' Statement of Material Facts at Exhibits "B" & "C."

Alternatively, Defendant Buchanan Inc. argues that it should not be bound to the rates in the

8

2003-2006 CBA because Plaintiffs failed to request changes to the 2000-2003 CBA.  Article One of

the 2000-2003 CBA provides that

> [n]o changes in this Agreement shall be made **prior to the
> termination date**, unless mutually agreed upon by both parties. This
> Agreement shall be renewed automatically from year to year after the
> termination date.  If any party wants to change this Agreement, he
> must notify the other party in writing at least three (3) months **prior
> to the termination date**.

*See* Plaintiffs' Statement of Material Facts at Exhibit "A" at Art. 1 (emphasis added).

The 2000-2003 CBA terminated by its terms on April 30, 2003.  The change in hourly rate

did not take effect until June 1, 2003, as part of the 2003-2006 CBA.  Defendant Buchanan Inc.'s

interpretation of this rate change as a change to the 2000-2003 CBA is clearly in error.  Moreover,

even if the Court were to construe this hourly rate change as a change to the terms of the 2000-2003

CBA, Defendants would still be bound to this new rate under the 2003-2006 CBA because

Defendant Buchanan Inc. paid its employees using the new rates and deducted union dues from

those rates, clearly demonstrating its adoption of this modification.

Accordingly,  the Court holds that Defendant Buchanan Inc. is liable for contributions at the

rates set forth in the 2000-2003 CBA for the period from April 7, 2003, through May 31, 2003, and

at the rates set forth in the 2003-2006 CBA for the period from June 1, 2003, through June 13,

2003.[10]

---

[10] Since, as noted, the union rate remained the same, there is no dispute that Defendant
Buchanan Inc. was required to pay dues at this rate for the entire period in question.

*3. Damages*

Section 1132(g)(2) of Title 29 of the United States Code provides that

> [i]n any action under this subchapter by a fiduciary for or on behalf of
> a plan to enforce section 1145 of this title in which a judgment in
> favor of the plan is awarded, the court shall award the plan–
>> **(A)** the unpaid contributions,
>> **(B)** interest on the unpaid contributions,
>> **(C)** an amount equal to the greater of –
>>> **(i)** interest on the unpaid contributions,
>>> or
>>> **(ii)** liquidated damages provided for
>>> under the plan in an amount not in
>>> excess of 20 percent . . . of the amount
>>> determined by the court under
>>> subparagraph (A),
>> **(D)** reasonable attorney's fees and costs of the action,
>> paid by the defendant, and
>> **(E)** such other legal or equitable relief as the court
>> deems appropriate

> For purposes of this paragraph, interest on unpaid contributions shall
> be determined by using the rate provided under the plan, or, if none,
> the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

The 2000-2003 CBA provides that,

> [i]f no payment is received by the Fund prior to the 60th day
> following the weekly payroll period for which hours are worked and
> for which contributions are required, the delinquent Employer shall be
> required to pay:
>> **a)** The unpaid contributions; and
>> **b)** Interest on the unpaid contributions at the rate of
>> two percent (2%) per month. Such interest shall
>> commence with the date such contributions were due
>> the Fund pursuant to Section 18.4 of this agreement;
>> and
>> **c)** Liquidated damages equal to twenty percent (20%)
>> of the unpaid contribution; and
>> **d)** All attorney's fees, paralegal fees, audit fees,

auditor's fees, and other costs of collection.

*See* Plaintiffs' Statement of Material Facts, at Exhibit "A" at Article 18 § 18.7.

### a. Contributions

Plaintiffs submitted a chart with their calculation of the amount of contributions that

Defendant Buchanan Inc. owes the Funds for the period of April 7, 2003, through June 13, 2003.

*See* Plaintiffs' Statement of Material Facts at Exhibits "C" & "D."  According to that chart,

Defendants owe at total of $13,942.46 in contributions to the Funds ($9,908.10 using the rate set

forth in the 2000-2003 CBA and $4,034.36 using the rate set forth in the 2003-2006 CBA).[11]

Accordingly, the Court awards Plaintiffs  $13,942.46 in unpaid contributions that Defendant

Buchanan Inc. owes to the Funds.

### b. Interest[12]

Under section 1132(g)(2)(B), and Article 18 of the 2000-2003 CBA, Plaintiffs are entitled to

interest on the amount of unpaid contributions.  *See* 29 U.S.C. § 1132(g)(2)(B).  Under the 2000-

2003 CBA, the amount of interest on unpaid contributions due to the Funds is two percent (2%) per

month.  Plaintiffs calculate the amount of interest owed from June 15, 2003, through September 9,

2005, on the unpaid contributions (contributions for the period from April 7, 2003, through June 13,

2003) to be $9,781.35.  *See* Plaintiffs' Statement of Material Facts at Exhibit "D" at 2.  Accordingly,

---

[11] The 2000-2003 CBA rate was $11.31/per hour.  *See* Plaintiffs' Statement of Material Facts at Exhibit "C."  The 2003-2006 CBA rate was $11.66/hour.  *See id.*

[12] The amount of interest is computed only to September 9, 2005.  Thus, the parties will have to compute any additional interest that has accrued beyond that date.

the Court awards Plaintiffs $ 9,781.35 in interest on the unpaid contributions Defendant Buchanan Inc. owes to the Funds.

### c. *Liquidated Damages*[13]

Section 1132(g)(2)(C) of Title 29 of the United States Code provides that the court shall award an amount equal to the greater of the amount of interest on the unpaid contributions or liquidated damages under the plan not to exceed twenty percent.  *See* 29 U.S.C. § 1132(g)(2)(C).  The 2000-2003 CBA provides for liquidated damages in the amount of twenty percent of the unpaid contributions.  *See* Plaintiffs' Statement of Material Facts at Exhibit "A" at Art. 18.  Plaintiffs have requested liquidated damages in the amount of $2,788.49, which is equal to twenty percent of the unpaid contributions.  *See id.* at Exhibit "D" at 1.  Accordingly, the Court awards Plaintiffs liquidated damages in the amount of $2,788.49.

### d. *Attorney's Fees and Costs*

Section 1132(g)(2)(D) provides that a court shall award reasonable attorney's fees and costs of the action.  *See* 29 U.S.C. § 1132(g)(2)(D).  The party requesting attorney's fees must state, with specificity, the date, the hours expended and the nature of the work done for each attorney.  *See Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec.Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)

---

[13] In his affidavit, Andrew M. Butler states that Defendants owe $12,902.93 in liquidated damages.  *See* Affirmation of Andrew M. Butler, dated September 9, 2005 ("Butler Aff.), at ¶ 11.  The Court is at a loss to determine how Mr. Butler reached that conclusion.  As Mr. Butler acknowledges "[p]ursuant to the collective bargaining agreement and 29 U.S.C. § 1132(g)(2), . . . recovering employee benefit funds shall receive liquidated damages equal to twenty percent (20%) of the delinquent employer contributions."  *See id.*  Twenty percent of $13,942.46 (the amount of delinquent employer contributions) equals $2,788.49, not $12,902.93.

(citing [*N.Y.S. Ass'n. for Retarded Children, Inc.*], 711 F.2d at 1148).  Contemporaneous time records are a prerequisite to such an award; however, attorneys are not required to record in great detail how each minute of their time was spent, but hours that are "'excessive, redundant, or otherwise unnecessary' must be excluded from the calculation."  *See N.Y.S. Teamsters Conferenc Pension & Retirement Fund v. United Parcel Serv. Inc.*, 2004 WL 437474, at*3 (quotations omitted).

In addition, an award of attorney's fees includes reasonable out-of-pocket expenses normally charged to fee-paying clients.  *See id.* at *6 (quoting *Reichman v. Bonsignore, Brignati & Mazzota P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)) (citation omitted).  Courts in this District have held that costs associated with "lodging, meals, transportation, photocopying, postage, long distance telephone charges, and facsimiles" are reasonable out-of-pocket expenses and thus recoverable.  *See id.* (citing *O'Grady v. Mohawk Finishing Prods., Inc.*, No. 96-CV-1945, 1999 WL 30988, *7-*9 (N.D.N.Y. Jan. 15, 1999)).  In addition, computerized legal research costs are recoverable.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 98 (2d Cir. 2004).

Plaintiffs have not provided the Court with contemporaneous time records for their counsel, the number of hours that counsel expended or the nature of the work that counsel performed.  In addition, they have not indicated what costs, if any, they have incurred with the exception of "court costs" in the amount of $150.00.  *See* Butler Aff. at ¶ 13.  Therefore, the Court directs Plaintiffs to submit the documents necessary to calculate an award of reasonable attorney's fees and costs.

**C.      Union Dues**[14]

> *1. Whether Defendants can offset the amount they owe to Local 267 for union dues against the damages they suffered as a result of Local 267's alleged breach of the 2000-2003 CBA*

There is no question that Defendant Buchanan Inc. was required to deduct and remit union dues to Local 267.  *See* Plaintiffs' Statement of Material Facts at Exhibit "A" at Art. 19;  Exhibit "B. "  However, Defendant Buchanan Inc. asserts that it is not liable to Local 267 for unpaid union dues because Local 267 breached the 2000-2003 CBA.  *See* Defendants' Mem. at 2; Plaintiffs' Reply Mem. at 2.  Moreover, Defendant Buchanan Inc. asserts that Local 267's breach of the 2000-2003 CBA is a defense to the action for lost dues and is a basis to set off any dues Defendants owe.  *See id.*

"The common law doctrine of setoff allows parties who owe mutual debts to each other to assert the amounts owed, subtract one from the other, and pay only the balance.  'The general rule, recognized by courts and commentators alike, holds that mutual debts [sic] and credits between parties may be set off even though they arise from different transactions.'"  *J.B.I. Indus., Inc. v. Suchde*, No. 99 Civ. 12435, 2000 WL 1174997, *9 (S.D.N.Y. Aug. 17, 2000) (quoting *Midland Ins. Co v. Corcoran*, 590 N.E.2d 1186, 1190, 582 N.Y.S.2d 58, 62 n. 2 (1992)).  In the context of setoff, a mutual debt is a debt that is due to and from the same person in the same capacity.  *See id.* (quotation and other citation omitted); *Modern Settings, Inc. v. Prudential-Bache Secs., Inc.*, 936

---

[14] As noted, the rate at which dues are deducted is the same in both the 2000-2003 CBA and the 2003-2006 CBA.  *See* Plaintiffs' Statement of Material Facts at Exhibit "C."  However, because the hourly union wage rate in the 2003-2006 CBA was higher than the rate in the 2000-2003 CBA, the amount of dues deducted from an employee's wages under the 2003-2006 CBA was greater.  *See id.* at Exhibits "B" & "C."

F.2d 640, 648 (2d Cir. 1991) (citations omitted).  Thus, "[d]ebts between parties that arise when . . .

parties are acting in different capacities are not considered mutual."  *Int'l Union of Bricklayers &*

*Allied Craftsmen v. Gallante*, 912 F. Supp. 695, 706 (S.D.N.Y. 1996) (citing *Modern Settings*, *Inc.*

*v. Prudential-Bache Securities, Inc.*, 936 F.2d 640, 648 (2d Cir. 1991)) (other citation omitted).

     When an employer deducts union dues from an employee's wages, it is acting as the union's

agent, *see English v. Cunningham*, 269 F.2d 517, 539 (D.C. Cir. 1959), and "the moment monies are

withheld from the employee's wages for payment of union dues, they become the union's property."

*Amer. Fed. of Gov't Employees, Council 214, AFL-CIO v. Fed. Labor Relations Auth.*, 835 F.2d

1458, 1461 (D.C. Cir. 1987) (citing *English v. Cunningham*, 269 F.2d, 517, 539 (D.C. Cir.)) (other

citations omitted); *see also Devlin v. Transp. Commc'ns Int'l Union*, Nos.  95 Civ. 0742, 95 Civ.

10838, 2002 WL 413919, *12 (S.D.N.Y. Mar. 14, 2002) (citations omitted).

     In this case, the debts are not mutual; and, therefore, Defendant Buchanan Inc. is not entitled

to setoff the amount it owes to Local 267, either in its entirety or otherwise.  The two debts at issue

here are (1) Defendants' obligation to withhold and remit union dues to Local 267 and (2) Local

267's obligation to refer qualified persons to Defendants when Defendants request it.  The first

obligation is based upon an agency relationship.  Defendant Buchanan Inc. acts as Local 267's agent

when it withholds union dues from its employees' wages and remits those dues to Local 267.  The

dues that Defendant Buchanan withholds from its employees' wages are the property of Local 267.

However, Defendant Buchanan Inc. is not acting as Local 267's agent when it employees union

employees.  Under the terms of the 2000-2003 CBA, "[Defendant Buchanan Inc.] shall request

[Local 267] to refer competent and skilled Journeymen, Apprentices, and/or helpers and [Local 267]

will, to the best of its ability, refer qualified personnel for the work for which they were requested."

15

*See* Plaintiffs' Statement of Material Facts at Exhibit "A" at § 9.2.  However, "[Defendant

Buchanan Inc.] shall retain the right to reject any applicant referred by [Local 267]."  *See* Plaintiffs'

Statement of Material Facts at Exhibit "A" at § 9.3.  Therefore, Defendant Buchanan Inc. was not

acting on Local 267's behalf when it hired union employees.  Thus, any damages arising from Local

267's alleged breach of contract and the obligation that Defendant Buchanan Inc. owes to Local 267

with regard to unremitted dues are not mutual and cannot be setoff.[15]

Accordingly, the Court finds that Defendant Buchanan Inc. is not entitled to a setoff with

respect to the amount of dues it owes to Local 267.

### 2. Unremitted Dues

According to Exhibit "C," one and a half percent of the gross wages plus hourly ($ 0.35)

equals the amount of dues that Defendant Buchanan Inc. was required to deduct from its employees'

wages and to remit to Local 267.  *See* Plaintiffs' Statement of Material Facts at Exhibit "C."[16]  Thus,

according to the information Plaintiffs submitted, Defendant Buchanan Inc. owes Local 267 $845.19

in unremittted dues.  Accordingly, the Court awards Local 267 unremitted dues in the amount of

---

[15] Defendants also claim that Local 267 breached the collective bargaining agreement by favoring other signatories in violation of the "most favored nations clause."  However, for the same reasons, Defendants cannot offset their obligation to remit dues to Local 267 against Local 267's breach of its obligations under the "most favored nations clause" because the two debts are not mutual.  Defendants are acting in their capacity as agents when deducting and remitting dues. However, Defendants are not acting in their agency capacity when seeking equitable treatment with other employers.

[16] For example, if the total hours worked is forty and the gross wages equals $ 1,010.00 then the amount of dues owed equals $ 29.15 ( [40 x .35] + [.015 x 1,010]).

$845.19.[17]

**D.      Whether Plaintiffs are entitled to conduct an audit of Defendants' books**

"[An] audit requirement [is] not only 'entirely reasonable in light of ERISA's policies,' . . . but also 'highly relevant to legitimate trustee concerns' in view of 'the duties of plan trustees under ERISA' and of 'the common law of trusts upon which ERISA's [trustee] duties are based.'" *N.Y.S. Teamsters Conference Pension & Ret. Fund v. Boening Bros., Inc.*, 92 F.3d 127, 131 (2d Cir. 1996) (internal quotation omitted).  "'[F]und trustees have a fundamental duty to locate and take control of fund property – a duty for which the right to audit is crucial.'"  *Id.* at 132 (quoting *Jaspan v. Glover Bottled Gas Corp.*, 80 F.3d 38, 41 (2d Cir. 1996), *cert. denied,* 519 U.S. 821, 117 S. Ct. 77, 136 L. Ed. 2d 36 (1996)).  Where Trust Agreements make no specific reference to audits, "an employer audit may be conducted by ERISA trustees so long as that audit is 'necessary or appropriate to carry out the purposes of the trust and [is] not forbidden by the terms of the trust.'"  *Id.* at 133 (quoting *Restatement* § 186(b)).

The 2000-2003 CBA provides that "[t]he Association and the Independent Contractor and the Union and all other Employers covered by the Agreement agree to be bound by the terms of the Trust Agreements . . . and by all of the actions and rules of the Trustees administering such funds in accordance with the Trust Agreements, Collections Policies, Regulations and Rules . . . ."  *See*

---

[17] Article 19 of the 2000-2003 CBA provides that "[t]he provisions of Article 18 with respect to payment, late payment, delinquencies, interest, liquidated damages, and all fees and costs, shall apply to deductions under this Article 19."  *See* Plaintiffs' Statement of Material Facts at Exhibit A at Art. 19.  This appears to indicate that Plaintiffs would be entitled to interest and liquidated damages on the unremitted union dues; however, Plaintiffs have not requested or calculated such damages, and therefore, the Court will not award such damages on the unremitted union dues.

Plaintiffs' Statement of Material Facts at Exhibit "A" at Art. 18 § 18.2.  It later states that "for the purpose of enforcing rules concerning the **inspection and audit of pay roll records** [Trust Administrators may] seek any appropriate legal, equitable and administrative relief . . . ."  *Id.* at § 18.8 (emphasis added).  Moreover, the 2000-2003 CBA provides that the "[e]mployer shall be obligated to pay to all the respective funds all expenses incurred by the Trustees in such action, including all . . . **auditor's fees** [and] **audit fees** . . . ."  *Id.* (emphasis added).  When read together, these provisions of the 2000-2003 CBA clearly provide that Plaintiffs have, at least, the right to request that a court grant them permission to conduct an audit of Defendants' payroll records.

Accordingly, to ensure the accuracy of the amounts that Defendants owe Plaintiffs, the Court grants Plaintiffs' request and instructs Defendants to permit Plaintiffs to conduct an audit of their payroll and related records.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiffs' motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment is **GRANTED** in the amount of $27,357.49 as calculated herein;[18] and the Court further

---

[18] This figure includes the following:
    a. $13,942.46 in unpaid contributions
    b. $ 9,781.35 in interest on unpaid contributions
    c. $ 2,788.49 in liquidated damages
    d. $ 845.19 in unremitted dues
      $ 27,357.49 Total

ORDERS that Plaintiffs' request for permission to conduct an audit of Defendants' payroll and related records is **GRANTED**; and the Court further

ORDERS that Plaintiffs submit documents necessary to calculate an award of attorney's fees and costs within **twenty days** of the date of this Order; and the Court further

ORDERS that Defendants file any objections to Plaintiffs' attorney's fees application within **thirty days** of the date of this Order.


**IT IS SO ORDERED.**


Dated: February 14, 2006
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Chief United States District Court Judge